G. H. LADE et al., Appellees, v. BOARD OF SUPERVISORS OF HANCOCK COUNTY et al., Appellants.

DRAINS: "Deepening and Widening" Under Guise of "Cleaning and Repairing." An assessment made under a proceeding "*to clean and repair*" a public drain, without notice to the property owner, is wholly illegal, when the work actually done constitutes, in general substance, a "widening and deepening" of the ditch, even though, in the process of "widening and deepening," cleaning and repairing was done. (See Secs. 1989-a11, 1989-a21, Code Supp., 1913.)

**DRAINS:** Illegality—Estoppel. Landowners are not estopped to ob-
ject to an illegal assessment by the naked fact that they knew
that work was being done on the drain. So held where the work
done was under proceeding *to clean and repair*, but in truth con-
stituted a *widening and deepening.*

**PAYMENT:** Voluntary Payments—Drainage Assessments. The
payment of a drainage assessment to the county treasurer, un-
der the distinct understanding that such payment was to be held
subject to the outcome of pending litigation relative to the le-
gality of such assessment, is not such a voluntary payment as
will estop the one paying from demanding the return of the
money after the assessment has been declared illegal; and es-
pecially so when such payment remains unexpended in the hands
of the treasurer.

*Appeal from Hancock District Court.*—C. H. KELLEY, Judge.

MARCH 7, 1918.

REHEARING DENIED JUNE 24, 1918.

SUIT in equity, to cancel an assessment with which it
is sought to charge the appellees upon the claim that a drain-
age ditch has been cleaned and repaired. The claim is that
what was done was not cleaning and repairing, but an un-
authorized widening and deepening of such drainage ditch.
The trial court cancelled the assessment.—*Affirmed.*

*Wichman & Hastings* and *Ramsay & Blackstone,* for
appellants.

*Senneff, Bliss & Witwer,* for appellees.

SALINGER, J.—I. This record has 124 pages of abstract,
a 75-page amendment on part of appellee, and a second
amendment on his part. The original arguments have 70
pages, and there is a supplemental argument by appellee and
an objection to its being considered, which
includes a reply thereto. A most laborious
investigation of all these has satisfied us
that the real controversy is very narrow, and

1. DRAINS:
"deepening
and widening"
under guise
of "cleaning
and repairing."

it is to be regretted this could not be known until the exhaustive investigation of this record was finished.

The defendant board of supervisors authorized the cleaning and repairing of an existing drainage ditch, and made contract to have this done. The contractor performed work under this authorization and contract. An assessment has been levied, charging the lands of the plaintiffs. They instituted suit to have this assessment cancelled, on the ground that, no matter what was authorized by the board and contracted for, the work actually done was not cleaning and repairing, but widening and deepening said drainage ditch. The relief asked by them was granted by the trial court.

While it is true the board of supervisors has authority to have an existing ditch widened and deepened and to make assessment for the costs thereof, this may be done only if notice be given; and none was given. See Code Supplement, 1907, Section 1989-a11, as amended by Section 10, Chapter 118, Acts of the Thirty-third General Assembly, and Section 4, Chapter 87, Acts of the Thirty-fourth General Assembly, which was the law at the time involved in this controversy. So it does not matter that the work actually done might have been authorized, or that it was of benefit to these plaintiffs; and the sole question at this point is whether that for which it is sought to charge these plaintiffs was, in fact, no more than repairing and cleaning. If it was not repairing and cleaning, but widening and deepening, the cancellation of the assessment in review was justified. The trial judge declares:

"It is clear to me that all parties concerned in the work in question were acting under a misapprehension of the facts. What was actually done was far in excess of removing a fill, and far in excess of repairing. It was enlarging, deepening and widening and lengthening."

His conclusion upon this is that the assessing com-

plained of is not authorized by law. While, on this, a review *de novo*, this statement or finding on part of the trial court does not conclude us, it does have some weight. Giving it that, we find from the record that this pronouncement by the trial judge is fully sustained by the evidence. Because of the conclusion reached by us, much said on both sides needs no consideration. The chancellor could not reform the assessment. It was an entirety, based upon the assumption that the work done was cleaning and repairing. This being so, the assessment as a whole must fall, even if it were practicable and permitted to determine whether or not some cleaning and repairing was included in the work done. That is to say, an assessment having been made wholly on the ground that cleaning and repairing was to be paid by it, such assessment must be cancelled if, in general substance, the work done was not cleaning and repairing, and was of a character for which notice not given was by law required.

II. The naked fact that the landowners who now complain were advised that work was being done in the old ditch, does not create an estoppel against them. There is no evidence that they knew that what was being done was not a cleaning and repairing of the ditch, but was, instead, a substantial lowering of its level, or a substantial widening. The board of supervisors itself did not apprehend that the latter was to be done, nor know it was being done. The board certainly was as much under obligation to prevent unauthorized work as the landowner was to assume that such duty had not been performed. If it was the duty of the county authorities to see to it that the ditch should not be deepened and widened, it was not for these landowners to assume that the board would permit unauthorized work, and that the landowner must take steps to prevent it. The plaintiffs knew that widening and deepening could not lawfully

2. DRAINS: illegality: estoppel.

be engaged in at their cost unless they had been served with notice, and knew they had not been so served. Instead of assuming and anticipating and determining that the doing of the work which they saw was being done because the board of supervisors contemplated the levy of an illegal assessment against them, it was their right to assume that the work being done was such as the law permitted. We think the question is fairly ruled in principle by *Wingert v. City of Tipton,* 134 Iowa 97.

III. Some of the landowners, after this suit began, deposited their part of this assessment with the county treasurer, with the express understanding that same was to be held subject to the litigation and its ter-

**3. Payments: voluntary payments: drainage assessments.**

mination and determination. The money has not been disbursed, and no one has been put to a change of position by reason of the deposit. We think such payment was not a voluntary payment, even on part of those of the plaintiffs who made it, in such sense as now to estop them. Of course, this is so as to those plaintiffs who made no such payment. In principle, this position is sustained by *Winzer v. City of Burlington,* 68 Iowa 279.

The decree below must be—*Affirmed.*

Preston, C. J., Evans and Gaynor, JJ., concur.